## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

| ERNEST MORRIS, | ) | |
|---|---|---|
| | ) | |
| Petitioner/Defendant, | ) | |
| | ) | |
| v. | ) | Civ. A. No. 04-1570-GMS |
| | ) | Cr. A. No. 02-141-GMS |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent/Plaintiff. | ) | |

## **MEMORANDUM OPINION**[1]

———— ——————————————

Ernest Morris. *Pro se* petitioner.

April M. Byrd, Assistant United States Attorney, United States Department of Justice,
Wilmington, Delaware. Attorney for respondent.

————————————— —————————

*April 16* , 2008
Wilmington, Delaware

———————————————

[1]This case was originally assigned to the Vacant Judgeship, and re-assigned to the
undersigned on January 30, 2008.

**SLEET, Chief Judge**

## I. INTRODUCTION

Petitioner Ernest Morris filed a *pro se* motion to vacate, set aside, or correct sentence

pursuant to 28 U.S.C. § 2255. (D.I. 187; D.I. 194.) The Government filed its answer. (D.I. 209.)

For the reasons discussed, the court will deny Morris' § 2255 motion without holding an

evidentiary hearing.

## II. PROCEDURAL AND FACTUAL BACKGROUND

On January 28, 2003, a federal grand jury returned a superseding indictment charging

Morris and two others, Eric Lloyd and Albari Malik Johnson, with four counts involving

conspiracy, possession, and firearm offenses. Only Count I of the superseding indictment

charged Morris with an offense, specifically, conspiracy to possess with intent to distribute more

than 500 grams of cocaine in  violation of 21 U.S.C. § 841(a)(1), (b)(1)(B) and 21 U.S.C. § 846.[2]

(D.I. 19.)  Magistrate Judge Thynge issued an arrest warrant for Morris, and he was arrested the

next day.

During an interview with members of the Drug Enforcement Administration ("DEA"),

Morris admitted his involvement in the charged drug conspiracy and detailed his recent drug

trafficking activities.  Specifically, he admitted that earlier in the month he bought 4 kilograms of

---

[2]Count I also charged Eric Lloyd with conspiracy to possess with intent to distribute more
than 500 grams of cocaine in  violation of 21 U.S.C. § 841(a)(1), (b)(1)(B) and 21 U.S.C. § 846.
Count II charged Eric Lloyd and Albari Malik Johnson with conspiracy to possess with intent to
distribute more than 5 kilograms of cocaine (21 U.S.C. § 841(a)(1), (b)(1)(a) ; 21 U.S.C. § 846),
Count III charged Johnson with possession of a firearm by an unlawful user of controlled
substances (18 U.S.C. § 922(g)(3); 18 U.S.C. §924(a)(2), and Count IV charged Lloyd with
possession with intent to distribute more than 5 grams of cocaine base (21 U.S.C. § 841(a)(1),
(b)(1)(B). (D.I. 19.)

cocaine from a Florida-based drug dealer and stored the drugs at his stash house located at 1018 Elm Street in Wilmington, Delaware. Morris admitted that he "cooked" approximately 3 kilograms of the cocaine into crack cocaine and sold it in multiple ounce quantities throughout Wilmington. Morris also described a conspiracy scheme to smuggle large quantities of cocaine to Delaware from Texas in the early spring and summer of 2001. (D.I. 70.) Morris stated that his co-conspirator, Eric Lloyd, was the head of the pyramid and the person with the Texas drug connections. After the interview ended, DEA agents searched Morris' stash house and recovered 172 grams of crack cocaine, as well as 638 grams of cocaine, which remained from the 4 kilogram purchase.

Joseph A. Hurley, Esquire, entered his appearance as Morris' counsel on January 31, 2003. Based on the foregoing drug seizure from Morris' stash house, a federal grand jury on February 13, 2003 returned a 6 count second superseding indictment ("Second Superseding Indictment"), charging Morris with the following two additional counts: Count V, possession with intent to distribute more than 50 grams of cocaine base in violation of 21 U.S.C. § 841(a)(1), (b)(1)(A)) and Count VI, possession with intent to distribute more than 500 grams of cocaine in violation of 21 U.S.C. § 841 (a)(1), (b)(1)(B)).[3] (D.I. 27.)

Morris continued to cooperate with the Government in gathering information that eventually led to the arrest and prosecution of Clarence Briscoe-Bey. During this time, the Government was independently investigating the Texas/Delaware drug conspiracy involving

---

[3]The Second Superseding Indictment also added Albari Malik Johnson to Count I, changed the number of original Count II to III, added a new Count II (charging Lloyd and Johnson with knowingly possessing with intent to distribute more than 5 grams of cocaine in violation of 841(a)(1) and (b)(1)(B), changed the number of original Count III to Count IV, and added Counts V and VI as described in the text of the opinion. (D.I. 27.)

2

Morris. Sometime in April 2003, the Government discovered that Morris had lied in his initial

statement to the DEA agents, and that Morris, not Lloyd, was the person with the Texas drug

connections. (D.I. 161 at pp. 7-8.) After the Government learned of Morris' materially false

statements, the Government advised Mr. Hurley in a letter dated April 22, 2003 that Morris'

deception left it no choice but to terminate Morris' cooperation with respect to Briscoe-Bey's

prosecution. Therefore, on April 23, 2003, the grand jury returned a third superseding indictment

("Third Superseding Indictment"), which amended the charges against Morris' co-defendants,

but left the charges against Morris unchanged.[4] (D.I. 66.)

Thereafter, Mr. Hurley and the Government negotiated a non-cooperation plea agreement.

On July 7, 2003, Morris dismissed Mr. Hurley as counsel and retained John S. Malik, Esquire to

represent him. The Honorable Kent A. Jordan held a change of plea hearing on July 18, 2003.

During that hearing, Morris, represented by Mr. Malik, pled guilty to Counts I, IV, and V of the

Third Superseding Indictment, in return for the Government's agreement to file a Section 5K1.1

motion. The plea agreement specifically stated that the maximum penalty for Counts I and V

was 40 years imprisonment, with a mandatory minimum of 5 years imprisonment, a lifetime of

supervised release, a $2,000,000 fine, and a $100 special assessment. The mandatory minimum

sentence for Count IV was 10 years imprisonment, with a minimum mandatory of 10 years

imprisonment, lifetime of supervised release, a $4,000,000 fine, and a $100 special assessment.

According to the plea agreement, the Government agreed to file a motion pursuant to Section

---

[4]The only change in the Third Superseding Indictment with respect to Morris was the
number of the counts: Count V of the Second Superseding Indictment was re-numbered to
Count IV in the Third Superseding Indictment, and Count VI of the Second Superseding
Indictment was re-numbered to Count V in the Third Superseding Indictment. Count I is the
same in both the Second and Third Superseding Indictments. (D.I. 66.)

3

5K1.1 of the United States Sentencing Guidelines based on the defendant's substantial assistance in the arrest, but not the prosecution, of Clarence Briscoe-Bey. (D.I. 83.)

During Morris' sentencing hearing held on December 22, 2003, the Honorable Kent A. Jordan granted the Government's Section 5K1.1 motion to depart downward from the guideline range of 324-405 months imprisonment as set forth in the PSR, and sentenced Morris to 180 months imprisonment, followed by ten years of supervised release. Morris did not appeal his sentence or conviction.

Morris filed his § 2255 motion on December 22, 2004, and an amended § 2255 motion on February 22, 2005. (D.I. 187; D.I. 194.) The Government filed memorandum in opposition, and Morris filed a response. (D.I. 209; D.I. 211.) Morris' § 2255 motion is ready for review.

## III.  EVIDENTIARY HEARING

A district court is not required to hold an evidentiary hearing on a motion filed pursuant to 28 U.S.C. § 2255 if the "motion and the files and records of the case conclusively show" that the petitioner is not entitled to relief. 28 U.S.C. § 2255; *see also United States v. Booth*, 432 F.3d 542, 545-46 (3d Cir. 2005); *United States v. McCoy*, 410 F.3d 124, 131 (3d Cir. 2005); Rule 8(a), 28 U.S.C. foll. § 2255. However, the Third Circuit has expressed a preference for an evidentiary hearing when a "defendant is convicted of a crime and alleges that his lawyer failed to appeal the conviction, and there is a potential factual dispute on this issue, the defendant is entitled to a hearing before the District Court to prove that he made the request and that the lawyer failed to honor it." *Solis v. United States*, 252 F.3d 289, 295 (3d Cir. 2001).

Although Morris asserts ineffective assistance of counsel, he does not allege that counsel failed to file an appeal despite his request to do so. Further, as explained below, the record

4

conclusively demonstrates that Morris is not entitled to relief for any of his claims. Accordingly, the court concludes that an evidentiary hearing is not warranted.

## IV. DISCUSSION

Morris asserts that his guilty plea was not entered voluntarily and knowingly due to the ineffective assistance of his first counsel, Joseph Hurley. More specifically, Morris contends that Mr. Hurley provided ineffective assistance by: (1) advising Morris to tell the truth with respect to his co-defendants' roles in the crimes once the Government became aware of Morris' prior lies regarding his co-defendants' role, without first seeking some type of protection for his "self-incrimination"; and (2) promising Morris that he would be sentenced to 3 years imprisonment even though the Government knew about Morris' misleading statements regarding his co-conspirators' roles in the conspiracy. The Government contends that the court should deny Morris' § 2255 motion in its entirety because the claims are meritless.

A federal prisoner's claim for ineffective assistance of counsel is properly raised for the first time in federal district court as a § 2255 motion rather than on direct appeal. *See United States v. Garth,* 188 F.3d 99, 107 n.11 (3d Cir. 1999); *United States v. Cocivera,* 104 F.3d 566, 570 (3d Cir. 1996). The clearly established Supreme Court precedent governing ineffective assistance of counsel claims in the guilty plea context is the two-pronged standard enunciated by *Strickland v. Washington,* 466 U.S. 668 (1984) and *Hill v. Lockhart,* 474 U.S. 52, 58 (1985). Under the first *Strickland/Hill* prong, Morris must demonstrate that "counsel's representation fell below an objective standard of reasonableness," with reasonableness being judged under professional norms prevailing at the time counsel rendered assistance. *Strickland,* 466 U.S. at 688; *Hill,* 474 U.S. at 58. Under the second *Strickland/Hill* prong, Morris must demonstrate a

5

reasonable probability that, but for counsel's error, he would not have pled guilty and would have insisted on proceeding to trial. *Hill*, 474 U.S. at 59; *United States v. Nahodil*, 36 F.3d 323, 326 (3d Cir. 1994). In order to sustain an ineffective assistance of counsel claim, Morris must make concrete allegations of actual prejudice and substantiate them or risk summary dismissal. *See Wells v. Petsock*, 941 F.2d 253, 259-260 (3d Cir. 1991); *Dooley v. Petsock*, 816 F.2d 885, 891-92 (3d Cir. 1987). Although not insurmountable, the *Strickland* standard is highly demanding and leads to a "strong presumption that the representation was professionally reasonable." *Strickland*, 466 U.S. at 689. The court will address Morris' two ineffective assistance of counsel claims in seriatim.

## A. Claim One: counsel's advice regarding Morris' story to the DEA

After learning of Morris' deception regarding his role in the Texas/Delaware drug conspiracy, the Government gave Morris an opportunity to "come clean." Morris contends that he asked Mr. Hurley if he should tell the truth, and that Mr. Hurley responded "you're already in it up to here (indicating), it's not going to hurt to be in it up to here (indicating) . . . tell them the truth or stick to your original story." (D.I. 187, Exh. A. at p. 16.) Although Morris decided to tell the truth, he complains that Mr. Hurley provided ineffective assistance by failing to protect Morris from the results of his "self-incrimination." In short, Morris appears to believe that Mr. Hurley provided ineffective assistance by failing to negotiate a more favorable plea agreement.

After reviewing Morris' argument within the *Strickland/Hill* framework, the court concludes that claim one lacks merit. Morris fails to acknowledge the significant fact that he independently decided to deceive the Government without Mr. Hurley's knowledge. After learning about Morris' deception, Mr. Hurley merely stated the obvious, namely, that the

6

Government already knew about Morris' dishonesty, and that Morris would have to deal with the consequences of that dishonesty whether or not he "came clean." Mr. Hurley's "advice" did not fall below objective standards of reasonableness.

Moreover, Morris fails to demonstrate prejudice under the *Strickland/Hill* test. To the extent Morris believes that the additional charges contained in the Second Superseding Indictment (Counts V and VI)[5] were brought against him after the Government learned about his lies, he is mistaken. (D.I. 194 at pp. 23.) The Government did not discover Morris' deception until the middle of April 2003, whereas the Second Superseding Indictment, which charged Morris with the drugs found in his stash house on the day of his arrest, was returned on February 13, 2003.

The court also rejects Morris' implicit argument that Mr. Hurley could have somehow prevented the Government from deciding to abandon the idea of requesting a sentence less than the 10 year mandatory minimum term under 18 U.S.C. § 3553(e), or that Mr. Hurley could have prevented the additional 4 points to his base offense level for being a leader/organizer and the additional 2 points for obstruction of justice. Morris conveniently ignores the fact that the Government knew about Morris' deception before he decided to "come clean," and that the Government's decision to rescind its prior plea proffer and replace it with a non-cooperation plea agreement was based on its own independent knowledge of Morris' deception. Morris does not explain, and the court does not discern, how Mr. Hurley could have "protected" Morris from the consequences of his own deception. In fact, the Government's April 22, 2003 letter to Mr.

_____

[5]Counts V and VI of the Second Superseding Indictment became Counts IV and V of the Third Superseding Indictment.

7

Hurley, as well as Mr. Hurley's April 30, 2003 letter in response to the Assistant United States

Attorney prosecuting the case, reveals that Mr. Hurley diligently attempted to protect Morris'

interest and that he pursued as much damage control as possible in the wake of the Government's

discovery. The letter from the Assistant United States Attorney states, in relevant part:

> I considered the issue you raised during our discussion and in your follow-up letter,
> namely that your client testify at trial on his own behalf, admit his participation in the
> offenses charged, and testify truthfully about the participation of his co-defendants, in the
> hopes that the Government will file a substantial assistance motion based on his
> testimony. The Government cannot, however, use your client as a witness, either directly
> or indirectly. Moreover, should your client elect to testify at trial, his testimony, even if
> helpful, would not constitute substantial assistance to authorities warranting a departure
> motion. While your client has every right to testify on his own behalf, the Government
> will not file a substantial assistance motion based on such testimony.

(D.I. 209 at Exh. A.) In turn, Mr. Hurley responded by letter that he was "less than enthusiastic"

about the Government's non-cooperation plea offer, and that he viewed the Government's

decision to not file a § 3553 motion to remove the mandatory 10 year minimum in consideration

of Morris' substantial cooperation as a "draconian" "penalty." (D.I. 211 at Exh. D.) Mr. Hurley

also stated that he was asking the United States Attorney, Colm Connelly, to "indicate the

process for his review" of the matter. *Id.* Accordingly, the court will deny claim one as

meritless.

### B. Claim Two: counsel promised Morris a 3 year sentence

According to Morris, Mr. Hurley advised him the maximum sentence he would receive

under the plea agreement would be 3 to 5 years of imprisonment, not the 15 year (180 month)

sentence he actually received. Morris also contends that he would not have pled guilty if not for

Hurley's incorrect sentencing advice. As explained below, the record demonstrates that Morris

knew he faced a prison term much greater than the 3 to 5 year sentence allegedly "promised" by

8

Mr. Hurley.

It is well settled that, absent clear and convincing evidence to the contrary, a court must presume the veracity of a defendant's statements made while under oath in open court. *See Blackledge v. Allison*, 431 U.S. 63, 74 (1977). The plea agreement signed by Morris explicitly states the maximum penalties he faced upon entry of his guilty plea equaled 40 years imprisonment for Counts I and V and life imprisonment for Count IV, with a mandatory minimum of 5 years imprisonment for Counts I and V and a ten-year mandatory minimum term of imprisonment for Count IV. Judge Jordan reiterated those penalties at Morris' change of plea hearing, and Morris, who was under oath, expressly acknowledged his understanding of those penalties. Moreover, Mr. Malik, and not Mr. Hurley, represented Morris at the change of plea hearing, and Morris explicitly stated during the hearing that he had reviewed the charges against him as well as the sentencing guidelines with Mr. Malik, and that he was satisfied with Mr. Malik's performance. Finally, when Judge Jordan asked Morris if anyone made any promises or assurances outside of the plea agreement, Morris responded "no." (D.I. 209, Exh. B at pp.12-13.)

Morris has not provided any evidence to contradict the presumption of truthfulness accorded to the statements he made during his change of plea hearing. Therefore, the court will deny claim two as meritless.

## V. CERTIFICATE OF APPEALABILITY

Finally, the court must determine whether to issue a certificate of appealability. *See* Third Circuit Local Appellate Rule 22.2. A certificate of appealability is appropriate only if the petitioner "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The petitioner must "demonstrate that reasonable jurists would find the district

9

court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel,* 529 U.S. 473, 484 (2000).

The court is denying Morris' § 2255 motion after determining that his claims are meritless. The court is persuaded that reasonable jurists would not find this assessment debatable. Therefore, Morris has failed to make a substantial showing of the denial of a constitutional right, and the court will not issue a certificate of appealability.

## VI. CONCLUSION

For the reasons stated, Morris' 28 U.S.C. § 2255 motion to vacate, set aside, or correct sentence is dismissed. An appropriate order shall issue.

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ERNEST MORRIS, | ) |
| | ) |
| Petitioner/Defendant, | ) |
| | ) |
| v. | ) Civ. A. No. 04-1570-GMS |
| | ) Cr. A. No. 02-141-GMS |
| | ) |
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Respondent/Plaintiff. | ) |

**ORDER**

For the reasons set forth in the Memorandum Opinion issued in this action today, IT IS
HEREBY ORDERED that:

1.     Petitioner Ernest Morris' motion to vacate, set aside, or correct sentence pursuant
to 28 U.S.C. § 2255 is DISMISSED, and the relief requested therein is DENIED.  (D.I. 187; D.I.
194.)

2.     A certificate of appealability will not issue for failure to satisfy the standard set
forth in 28 U.S.C. § 2253(c)(2).

April 16, 2008
Wilmington, Delaware

CHIEF, UNITED STATES DISTRICT JUDGE

FILED

AFR 1 6 2008

U.S. DISTRICT COURT
DISTRICT OF DELAWARE